UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.P.B., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br><br> Defendant. | Case No. 20-cv-07336-SVK <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 20, 21 |

Plaintiff appeals from the final decision of the Commissioner of Social Security, which awarded her disability benefits for the period beginning May 27, 2017 but denied benefits for the period January 1, 2015 to May 26, 2017. The Parties have consented to the jurisdiction of a magistrate judge. Dkt. 9, 17. For the reasons discussed below, the Court **DENIES** Plaintiff's motion for summary judgment (Dkt. 20) and **GRANTS** Defendant Commissioner's cross-motion for summary judgment (Dkt. 21).

I.  **BACKGROUND**

In February 2015, Plaintiff filed applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI"). *See* Dkt. 16 (Administrative Record ("AR")) 454, 455. After a hearing, an Administrative Law Judge ("ALJ") issued a decision on November 15, 2017, finding that Plaintiff was not disabled from November 19, 2003 to the date of his decision. AR 34-56 (the "2017 ALJ Decision"). The ALJ concluded that Plaintiff suffered from one severe impairment, low back myalgia, but that the other impairments she claimed, including diabetes and vertigo/dizziness, were not severe. AR 41-43. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") limited her to light work with additional limitations. AR 43. The ALJ concluded that Plaintiff was not disabled because she was capable of performing her past relevant work as a security guard and as a ball sorter. AR 50.

After the Appeals Council denied review, Plaintiff sought review of the 2017 ALJ Decision by a court in this District. *See* Case No. 18-cv-05701-EMC. In its July 2, 2019 order

granting in part Plaintiff's motion for summary judgment in that case (the "Remand Order"), the court made several findings. First, the court found no error with respect to the ALJ's finding that Plaintiff was not disabled on or before her last insured date of December 31, 2008, the date by which she had to establish disability in order to be entitled to disability insurance benefits. AR 1034, 1036.[1] The court also found no error with respect to the ALJ's finding that Plaintiff was not disabled for the period 2009 through 2014. AR 1037. However, the court found error with respect to the period 2015 through November 15, 2017. *Id*. For this period, Plaintiff presented medical evidence to the Appeals Council related to Plaintiff's diabetes, vertigo/dizziness, and kidney problems that had not been presented to the ALJ. AR 1037-38. The court found that contrary to the Appeals Council's conclusion that this additional evidence did "not show a reasonable probability that it would change the outcome of the decision," the evidence, particularly evidence of Plaintiff's hospitalization between October 1 and November 3, 2017 for kidney-related problems and a medical record from December 2017 that indicated that Plaintiff was receiving dialysis, was material. *Id.* The court stated that "[a]lthough not necessarily conclusive of disability, the evidence could have had an impact on the ALJ's assessment that [Plaintiff's] diabetes was not severe because she had not been diagnosed with a chronic kidney disease." AR 1038-1039. The court also explained that although it found no error in the ALJ's finding that Plaintiff was not disabled through 2008 based on her back pain, "that does not foreclose a disability finding during a later period in time when both her kidney problems and back pain are taken into account in combination." AR 1040. The court also directed the Social Security Administration to reassess Plaintiff's credibility "in light of the new evidence that [she] presented to the Appeals Council." *Id.* The court remanded the case so that the Social Security Administration could consider "whether [Plaintiff] was disabled at any point from 2015 to November 15, 2017, based on, *e.g.*, her diabetes, related kidney issues, and/or back problems." AR 1041.

On remand, a hearing was held before the same ALJ, who issued a partially favorable

---

[1] At the 2020 hearing on remand, the ALJ noted that the approval of Plaintiff's subsequent disability claim based on blindness could change her date last insured to September 23, 2023. AR 903.

decision on June 19, 2020. AR 858-884 (the "2020 ALJ Decision"). The ALJ found that beginning on January 1, 2015, Plaintiff had the following severe impairments: diabetes mellitus with stage 3 chronic kidney disease and degenerative disc disease of the lumbar spine. AR 864. The ALJ concluded that prior to May 27, 2017, Plaintiff had the RFC to perform light work (with certain limitations) and could perform her past relevant work as a security guard and as a ball sorter. AR 870, 873. However, the ALJ awarded Plaintiff disability payments beginning on May 27, 2017 because he found her RFC prevented her from performing her past relevant work as of that date. AR 873-874.

On a subsequent claim, Plaintiff was granted Title II and Title XVI benefits for total blindness from December 10, 2018 to the present. Dkt. 20 at 5.

The issue in this case is whether Plaintiff is entitled to benefits for the period January 1, 2015 (the earliest date identified in the Remand Order) to May 26, 2017 (the day before benefits pursuant to the 2020 ALJ Decision began). Plaintiff has elected to forego the Appeals Council and appeal the 2020 ALJ Decision directly to this Court. Dkt. 1 (Complaint).

In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment (Dkt. 20, 21), which are now ready for decision without oral argument.

## II. ISSUES FOR REVIEW

1. Did the ALJ properly evaluate Plaintiff's credibility?
2. Did the ALJ properly evaluate the medical evidence?
3. Did the ALJ properly evaluate Plaintiff's residual functional capacity?

## III. STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the

substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion")  (internal quotation marks and citations omitted).  The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted).  Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record.  *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless.  *Brown-Hunter*, 806 F.3d at 492.  But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts."  *Id*. (internal quotation marks and citation omitted).

## IV.     DISCUSSION

### A.     Issue One:  Plaintiff's Credibility

Where, as here, the ALJ made no finding of malingering, a reviewing court must determine whether the ALJ identified specific, clear and convincing reasons for his conclusion regarding Plaintiff's credibility.  *Brown-Hunter v. Colvin,* 806 F.3d 487, 488-89 (9th Cir. 2015).  "This requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and … explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (internal quotation marks and citations omitted).

Plaintiff complained of  severe lower back pain that limited her ability to sit, stand, and walk, as well as vertigo that caused her to fall at times. *See* AR 866-867.  The ALJ found that "beginning on May 27, 2017, the claimant's allegations regarding her symptoms and limitations

4

are consistent with the evidence." AR 870.  In support of this finding, the ALJ noted that during a May 26, 2017 consultative examination by Emily Cohen, M.D., Plaintiff required assistance in changing position from supine to sitting due to severe back pain, could sit for only five to ten minutes before needing to stand, appeared unsteady on her feet multiple times after changing position, reported back pain during various maneuvers, and exhibited various other mobility limitations.  AR 871 (citing Ex. 10F (AR 853-857)).

However, Plaintiff challenges the ALJ's assessment of her credibility for the earlier period, between 2015 and May 26, 2017.  *See* Dkt. 20 at 8-9.  With respect to that time period, the ALJ concluded that the claimant's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to May 27, 2017."  AR 867.  In explaining his credibility finding, the ALJ considered the additional evidence in the record at the time of the 2020 hearing.  He stated that this additional evidence "supports finding the claimant also had severe diabetes mellitus in 2015" but nevertheless "appears consistent with the previous residual functional capacity" prior to the date at which the ALJ concluded Plaintiff became disabled, *i.e.,* May 27, 2017.  *Id.*  That "previous residual functional capacity," as set forth in the 2017 ALJ Decision, took into account at least some of Plaintiff's testimony regarding her symptoms by imposing additional restrictions on her ability to perform light work.  AR 43-50.  For example, the ALJ noted that Plaintiff claimed she could not sit for long periods and "as a precaution" included in the RFC the requirement that Plaintiff "must be permitted to stand for five minutes after sitting two hours."  AR 43.

In reaching the conclusion in the 2020 ALJ Decision that this RFC remained for the period from January 1, 2015 to May 26, 2017, the ALJ discussed medical records from that period in detail.  AR 867-869.  The ALJ noted that by contrast to Plaintiff's May 26, 2017 consultative examination, during her physical examinations in the earlier period, she "consistently maintained full strength, a normal gait, and generally normal motor and sensory function despite occasional dizziness, lower back pain, and subjective weakness."  AR 869 (citing Exs. 5F/27, 6F/4-5; 7F-1-4; 8F/3-8 and 46-50; 9F); *see also* AR 867-868; AR 869-870.  Accordingly, the ALJ concluded that

1  "the record appears more consistent with the residual functional capacity provided in the [2017
2  ALJ Decision] than with the claimant's alleged symptom severity during this period."  AR 869.
3  Again, the ALJ gave at least some credit to Plaintiff's reported symptoms when he imposed
4  accommodation requirements such as that Plaintiff be able to change positions between sitting,
5  standing, and walking (to accommodate her reports of pain and dizziness) and imposed various
6  environmental limitations (to accommodate her reports of dizziness).  AR 869, 870.

7      Plaintiff makes broad-brush arguments as to why the ALJ erred in evaluating her
8  credibility, with few citations to the record.  For example, Plaintiff argues that "the record
9  demonstrates a consistent medical history of disabling impairments" and accuses the ALJ of
10  giving "cursory and unsupported" reasons for rejecting Plaintiff's statements.  *Id.* at 8-9.  This
11  argument ignores the ALJ's careful discussion of and citation to the medical records.  *See, e.g.*,
12  AR 866-870.  Plaintiff also asserts that the ALJ "disingenuously" characterized her as refusing to
13  seek treatment and incorrectly considered her activities in a way that would "penalize[]" claimants
14  "for attempting to lead normal lives."  Dkt. 20 at 9.  However, the 2020 ALJ Decision as a whole
15  focused primarily on the contrast between her self-reported symptoms and her medical records,
16  not on Plaintiff's daily activities.  *See* AR 866-870.  Plaintiff's MSJ also argues that "Black
17  women are historically and systematically disbelieved when they report pain" and accuses the ALJ
18  of "subconscious bias" against Plaintiff.  *Id.*  The specific example Plaintiff gives to support this
19  accusation of bias is that "the ALJ characterizes the car that struck her as 'slow-moving' even
20  though the medical records themselves do not say that."  Dkt. 20 at 9.  However, the medical
21  record cited by the ALJ (*see* AR 867 (citing Ex. 7F/1)) states that the automobile was traveling at
22  "approx. 7-10 MPH."  AR 722.  Dr. Cohen also characterized the accident as a "low speed motor
23  accident."  AR 854.

24      Considering the record as a whole, the Court finds adequate support for the ALJ's
25  credibility determination because he provided specific, clear and convincing reasons for his
26  conclusions.  The Court also finds that ALJ's evaluation of Plaintiff's credibility complied with
27  instructions in the Remand Order, which required the Commissioner to reassess Plaintiff's
28  credibility in light of the new evidence that Plaintiff presented to the Appeals Council.  AR 1040.

### B.      Issue Two:  Evaluation of Medical Evidence

Plaintiff challenges the ALJ's weighing of the medical evidence, specifically his decision to give "limited weight" to the medical opinion of independent medical examiner Howard S. Shapiro, M.D.  Dkt. 20 at 10-11; *see also* AR 872.  Dr. Shapiro testified at the 2020 hearing to the effect that Plaintiff may have met or equaled listings relating to Plaintiff's spine, diabetes, or kidney impairments as early as 2003.  AR 919-926.

#### 1.     Standard for evaluating medical evidence

Preliminarily, the Court notes that although the applications for benefits that give rise to this case were filed in 2015, the Parties appear to agree that new Social Security Administration regulations regarding the evaluation of medical opinions that went into effect on March 27, 2017 may apply in this case.  Plaintiff states that "[t]he Social Security Administration has deemed that CDR cases after March 27, 2017 should apply the updated rules except for a narrow exception of cases under which this case does not fit," apparently referring to rules governing Continuing Disability Reviews.  Dkt. 20 at 10 n.1 (citing HALLEX I-5-3-30(IV)(E)).  The Commissioner states that "[h]ere, the agency's final decision was issued after the effective date of the final rules (June 2020), but Plaintiff filed her claim before (Feb. 2015)" and that thus "the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 17, 2017."  Dkt. 21 at 3 n.1.

As relevant to this case, the new regulations include a change in how medical evidence must be evaluated.  Under the former regulations, the "treating physician rule" required that the opinion of a treating physician was entitled to more weight than the opinion of an examining physician, and more weight was given to the opinion of an examining physician than a non-examining physician.  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  Where a treating physician's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it was required to be given controlling weight.  20 C.F.R. § 404.1527(c)(2).  The ALJ was required provide clear and convincing reasons, supported by substantial evidence, for rejecting the uncontradicted opinion of treating physicians.  *Ghanim*, 763 F.3d at 1160; *see also Thomas v.*

7

*Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that ALJ can reject uncontradicted treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his own interpretation thereof, and making findings") (internal quotation marks and citation omitted).  Where contradicted, the opinion of treating physicians could be rejected only for "specific and legitimate reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1160.

For benefits applications filed after March 27, 2017, "[t]he new regulations provide that the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also* 20 C.F.R. § 404.1520c(a).  Instead, the Commissioner will evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.' " *V.W.*, 2020 WL 1505716, at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853).  When evaluating medical opinions, the Commissioner "may, but [is] not required to," explain how the Social Security Administration considered the remaining factors listed in paragraphs (c)(3) through (c)(5) of the regulations, as appropriate.  20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions." *V.W.*, 2020 WL 1505716 at *14 (citation omitted). "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency." *Id.* (citing 20 C.F.R. § 416.920c(b)); *see also* 20 C.F.R. § 404.1520c(b).

8

### 2. Analysis

Plaintiff argues that the new regulations apply to the ALJ's evaluation of the medical evidence (Dkt. 20 at 9), and the Commissioner does not expressly specify which standard applies (Dkt. 21 at 6-7). For the reasons that follow, the Court concludes that under either set of regulations, the ALJ properly evaluated Dr. Shapiro's opinion.

The ALJ explained that Dr. Shapiro was an independent medical examiner who "had reviewed the majority of the available evidence" including "all evidence that addresses the relevant period in this decision." AR 872. The ALJ identified various inconsistencies in Dr. Shapiro's testimony at the hearing. *Id.* For example, Dr. Shapiro initially testified that Plaintiff met Listing 1.04A beginning on April 3, 2003, but after further questioning testified that she actually equaled the listing. *Id.; see also* AR 920-921, 923-925 (hearing transcript).[2] The ALJ noted that Dr. Shapiro's conclusion on this listing was based on "relat[ing] back" 2015 orthopedic reports to determine Plaintiff's "likely condition" in 2003. AR 872. With respect to Plaintiff's diabetes, the ALJ commented that Dr. Shapiro "testified primarily as to his interest in the claimant's insurance status during the relevant period as a possibility to explain her lack of treatment for many years." *Id.*; *see also* AR 921-22 (hearing transcript). The ALJ also remarked that Dr. Shapiro "did not provide any support" for his conclusions that Plaintiff's progressive kidney impairment might meet Listing 6.06 as of May 18, 2017 or Listing 6.05 as of February 2017. AR 872; *see also* AR 921 (hearing transcript). Based on this testimony, the ALJ decided that Dr. Shapiro's testimony was entitled to only limited weight. AR 872. As the ALJ explained:

> Although Dr. Shapiro had the opportunity to review the record addressing the full period at issue in this case, he offered no clear evidence in support of his stated conclusions regarding whether the claimant met or equaled any listed impairments. Despite finding the claimant might meet or equal several different listings, Dr. Shapiro did not identify relevant objective findings to support finding the claimant met a listing as of a particular date (2020 Hearing Testimony). Additionally, much of his testimony addressed issues not appropriate for consideration by an independent medical examiner, such as whether the claimant had insurance during certain periods. Because

---

[2] An impairment *meets* a listing when all of the medical criteria required for that listing is satisfied, whereas to *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (internal quotation marks and citations omitted).

9

> Dr. Shapiro did not offer sufficient support that the claimant met or equaled a listed impairment prior to or as of May 27, 2017, the undersigned affords his testimony limited weight…

*Id.*

The ALJ also discussed other medical evidence in the record and gave reasons for giving that evidence greater weight. The ALJ afforded the opinion of Dr. Cohen, who performed the May 26, 2017 consultative physical examination of Plaintiff, "significant weight." AR 871-872. As discussed above, the ALJ determined that Plaintiff was disabled as of May 27, 2017, the day after her examination by Dr. Cohen. AR 870-872. The ALJ analyzed Dr. Cohen's opinion and found it to be consistent with records from treating providers over the following months. AR 871. Based on his evaluation of the medical evidence, the ALJ decided that "Dr Cohen's assessment of [Plaintiff's] residual functional capacity at that time more persuasive" than Dr. Shapiro's opinion. AR 872.

The ALJ also discussed and gave "significant weight" to the opinions to consulting physicians Drs. Chan and Bradhouse, who reviewed the available records in 2015 and 2016, respectively. AR 869. He also gave "significant weight" to the opinion of Dr. Calvin Pon, who performed a consultative physical examination of Plaintiff on July 1, 2015. AR 869-870. In evaluating the opinions of each of these physicians, the ALJ noted areas in which they were consistent with each other and with other medical evidence. *Id.*

As with the ALJ's credibility determinations, Plaintiff makes sweeping arguments with respect to the ALJ's evaluation of the relevant evidence, with few citations to the record or to relevant case law. For example, Plaintiff argues that "[i]t is inexplicable that the ALJ could find a host of remarkably severe conditions at step 2 and yet provide no thorough discussion of how and the degree to which she is disabled by those severe impairments." Dkt. 20 at 11. Yet the 2020 ALJ Decision contains extensive analysis of the medical evidence and arrives at nuanced conclusions, such as finding Plaintiff disabled as of May 27, 2017 and imposing additional restrictions on Plaintiff's ability to perform light work before that date. *See* AR 869-872.

Viewing the record as a whole, the ALJ's weighing of the medical evidence, including his decision to give Dr. Shapiro's opinion only limited weight, is supported by substantial evidence,

1 and the Court finds no error here.

### C. Issue Three: Residual Functional Capacity Determination

"At steps four and five, the ALJ determines a claimant's residual functional capacity," which is "what one can still do despite one's limitations." *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014); 20 C.F.R. § 404.1520(e). The ALJ determines RFC "based on all the relevant medical and other evidence" in the record and "must consider a claimant's physical and mental abilities" and "the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain." *Garrison*, 759 F.3d at 1011. Plaintiff asserts that "rendering an RFC of Light for the elder [Plaintiff] during the relevant time period, is preposterous." Dkt. 20 at 13. She argues that the ALJ's RFC determination incorrectly determined her onset date and failed to consider her conditions in combination. Dkt. 20 at 13-14.

#### 1. Onset Date

Plaintiff argues that she "did not lose her ability to work suddenly on the date of May 27, 2017, as the ALJ suggests." Dkt. 20 at 13. Plaintiff argues that "[a]ll of the constant pain and spasms discussed by the examining doctor [Dr. Cohen] on May 26, 2017 were long standing complaints that show up consistently in [Plaintiff's] medical records." *Id.* In particular, Plaintiff argues that Dr. Cohen's evaluation "relies on the imaging records from 2016 'suggesting serious pathology' that support her conclusions" and yet the ALJ "selects an arbitrary onset date long after those imaging records were obtained." Dkt. 20 at 13-14.

"The onset date of a disability can be critical to an individual's application for disability benefits." *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017). "[T]he ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Id.* (internal quotation marks and citations omitted). "In some cases, it may be possible, based on the medical evidence[,] to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." SSR 83-20. "How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case" but "[t]his judgment … must have a legitimate medical basis." *Id.* Where the medical evidence from the relevant time period is unavailable or inadequate, the ALJ

11

must call a medical advisor to assist in in the determination of the onset date. *Id.* However, "SSR 83-20 does not apply when the record has no meaningful gaps, and "[u]nder ordinary circumstances, an ALJ is equipped to determine a claimant's disability onset date without calling on a medical advisor." *Wellington*, 878 F.3d at 874.

This case presents the ordinary circumstance where there is "a relatively complete medical chronology of [Plaintiff's] condition during the relevant time period," and Plaintiff does not argue otherwise. *Id.* In fact, she relies on medical records from 2015 and 2016 to challenge the ALJ's conclusion that her condition did not become disabling until May 27, 2017. Dkt. 20 at 11-12, 13-14. However, the ALJ acknowledged and addressed these records in reaching his conclusion about the onset date. *See, e.g.,* AR 869-872. Citing medical records, the ALJ found that "[d]uring the relevant period from 2015 until May 27, 2017, [Plaintiff] consistently maintained full strength, a normal gait, and generally normal motor and sensory function despite occasional dizziness, lower back pain, and subjective weakness." AR 869 (citing Ex. 5F/27, Ex. 6F/4-5, Ex. 7F/1-4, Ex. 8F3-8 and 46-50, and Ex. 9F). As noted by the ALJ, Dr. Pon concluded that Plaintiff could perform functions consistent with light work based on a consultative examination performed on July 1, 2015. AR 869-70; AR 720-721. Dr. Chan and Dr. Bradus reached similar conclusions based on their record reviews on July 21, 2015, and January 7, 2016, respectively. AR 869; AF 440-442; AR 463-464.

The medical record, including multiple records from the relevant period of 2015 through May 26, 2017, supports the ALJ's conclusion that Plaintiff's conditions did not become disabling until May 27, 2017.

### 2. Combination of Impairments

Plaintiff argues that the ALJ "failed to consider the combination of impairments that [Plaintiff] suffers from, despite requirements under both the law and the Remand Order that the ALJ consider the combined effect of her impairments." Dkt. 20 at 14. Plaintiff is correct that the ALJ must consider the combined impact of conditions which, although not independently severe enough to cause disability, act in concert to create disability. *See Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1523(c). However, Plaintiff does not articulate any

basis for her conclusion that the ALJ did not consider her impairments in combination. The ALJ conducted a detailed review of the medical records. The ALJ cited the requirement that he consider the "combination" of Plaintiff's impairments, demonstrating that he was aware of and applied the appropriate legal standard. AR 862, 863. Moreover, he gave the opinion of Dr. Cohen "significant weight" in reaching the conclusion that Plaintiff was disabled as of May 27, 2017 because "the combination and worsening of [Plaintiff's] severe impairments during this period appears consistent with Dr. Cohen's opinion." AR 872. The ALJ discussed in detail medical records from the earlier period of January 1, 2015 to May 26, 2017 that concerned issues such as Plaintiff's diabetes, kidney issues, dizziness, and back pain, but noted findings in those records concerning Plaintiff's full strength, generally normal range of motion, and stable symptoms with treatment during that period. AR 867-869.

Accordingly, substantial evidence supports the ALJ's conclusions regarding Plaintiff's RFC.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion for summary judgment.

**SO ORDERED.**

Dated: November 19, 2021

SUSAN VAN KEULEN
United States Magistrate Judge